## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

QUAYVON PEOPLES                                                    PETITIONER
ADC #168492

V.                              No. 4:20-CV-1484-KGB-JTR

DEXTER PAYNE,
Director, Arkansas Division of Correction                          RESPONDENT

## RECOMMENDED DISPOSITION

The following Recommended Disposition has been sent to United States

District Judge Kristine G. Baker. You may file written objections to all or part of

this Recommendation. If you do so, those objections must: (1) specifically explain

the factual and/or legal basis for your objection; and (2) be received by the Clerk of

this Court within fourteen (14) days of the date of this Recommendation. If you do

not file objections, Judge Baker may adopt this Recommendation without

independently reviewing all of the evidence in the record. By not objecting, you may

also waive any right to appeal questions of fact.

## I.    Introduction

A jury in Miller County, Arkansas found Petitioner Quayvon Peoples guilty

on two counts of raping his half-sister. After pursing a direct appeal and initial

postconviction proceedings in state court, Peoples now brings a federal Petition for

Writ of Habeas Corpus arguing that his trial counsel was ineffective. *Doc. 2*. Because

People's ineffective-assistance-of-counsel claims are procedurally defaulted, his Petition should be dismissed.

## II.    Background

### A. Allegations, Investigation, and Arrest of Peoples

In May 2016, Lisa Grant received a series of text message from her thirteen-year-old daughter, A.G. *Doc. 13-9 at 244, 262; Doc. 13-10 at 277*. In those messages, A.G told her mother that her half-brother, Quayvon Peoples, had sexually abused her when she was younger. *Doc. 13-9 at 244*.

Ms. Grant contacted the Texarkana Police department, which started an investigation into the allegations. *Doc. 13-9 at 262*. Following the investigation, which included an interview and examination of A.G. at the Texarkana Children's Advocacy Center, Detective Brett Gaitlin prepared a probable cause affidavit, and an arrest warrant was issued for Peoples on five allegations of rape. *Doc. 13-9 at 65, 262*; *Doc. 13-8 at 7*.

Peoples was arrested on July 6, 2016 and ultimately charged with three counts of rape. *Doc. 13-8 at 7, 10*. After Peoples rejected a plea offer of fifteen years in prison on a reduced charge, the parties proceeded to a jury trial on September 27, 2017. *Doc. 13-9 at 81–82, 205*.

### B. Pretrial Conference

During the pretrial conference, the parties and judge discussed the State's pending Motion in Limine, which asked that Peoples not be allowed to introduce information regarding:

> (1) Any sexual conduct, activity or any suggestion that [A.G.]…has ever had any sexual conduct, behavior, or activity as provided in Arkansas Rules of Evidence 412;
>
> (2) Any pending criminal charges against [A.G's other half-brother], Kendrick Mims.

*Doc. 13-8 at 25–26*.

According to the State's attorney, the discovery revealed that "on one occasion [] Mr. Mims and Mr. Peoples were [both] present during the commission of a sexual act [against A.G.]." *Doc. 13-9 at 206*. Instead of charging Kendrick Mims as an accomplice to Peoples for that one occasion, the State elected to pursue separate criminal proceedings against Peoples and Mims. The three rape charges brought against Peoples only included allegations of rape that Peoples committed alone. Mims was charged in a separate criminal proceeding with three separate and distinct charges of rape against A.G. *Doc. 13-9 at 206–207*.

In support of its Motion in Limine, the State's attorney argued that: (1) information regarding the allegations of sexual abuse against Mims were irrelevant because the State was only charging Peoples with rape charges on occasions where Mims was not present; and (2) "any allegations of sexual conduct or conduct by

3

another individual other than the defendant is strictly prohibited" under Arkansas's rape shield statute. *Doc. 13-9 at 206–207, 211.*

The trial court tentatively granted the Motion in Limine but acknowledged that information regarding Mims' alleged sexual conduct with A.G. could become relevant during the course of the trial. *Doc. 13-9 at 211–212.*

**C. Trial**

At trial, the State presented six witnesses: (1) Lisa Grant—the mother of the victim, A.G., and stepmother of Peoples and Mims; (2) Brett Gaitlin—the Texarkana police detective who investigated the rape allegations against Peoples and Mims; (3) A.G.—the victim, and half-sister of Peoples and Mims; (4) J.G—son of Lisa Grant, brother of A.G., and half-brother of Peoples and Mims; (5) Odia Russette—the nurse who conducted the sexual assault examination of A.G. at the Texarkana Children's Advocacy Center; and (6) Kaleigh Dodson—a forensic examiner from the Texarkana Children's Advocacy Center.

Lisa Grant. Lisa Grant testified that Peoples had come to live with her family in 2006. She had never noticed Peoples demonstrate any inappropriate behavior toward A.G. It was not until she received the text messages from A.G. in May 2016 that Mrs. Grant became aware that Peoples had sexually abused A.G.

Upon receiving the text messages, Mrs. Grant immediately took steps to report the abuse to the Texarkana Police Department and got in contact with Detective Brett Gaitlin.

On cross-examination defense counsel asked Mrs. Grant if Peoples had "been charged with any other offenses." *Doc. 13-9 at 255*. Mrs. Grant revealed that Peoples had "been arrested quite a few times" while living with the Grants on charges unrelated to the sexual abuse of A.G. *Id*.

<u>Detective Gaitlin</u>. Detective Gaitlin testified that, following the investigation, he sat down with Mrs. Grant to establish a timeline of the abuse. *Doc. 13-9 at 266–267*. He executed a probable cause affidavit on abuse allegations that took place between 2009 and 2011, and a judge issued an arrest warrant for Peoples. *Doc. 13-9 at 267–268*.

On cross examination, defense counsel questioned Detective Gaitlin about the evidence supporting the probable cause affidavit. Detective Gaitlin stated that there were two eyewitnesses to the allegations: Kendrick Mims and J.G. *Doc. 13-9 at 270*.

Despite the trial judge's ruling that the parties could not bring up any allegations of sexual contact between A.G. and Mims, defense counsel questioned Detective Gaitlin about the pending rapes charges against Mims. The State's attorney objected, and the following sidebar occurred at the bench:

Defense Counsel:        I'm sorry. I didn't expect him to say…they
                        had eyewitness on this, but now that it's

|                    | brought up…I'm just trying to show that Mr. Mims is facing the same charges [as Peoples]. |
|--------------------|----------------------------------------------|
|                    | ***                                          |
| The Court:         | If there is anything at all that Mr. Mims or [J.G.] had sex with this young lady that they've admitted to, that should have been handled with the rape shield motion. So all we need to be talking about is denials. |
| State's Counsel:   | I can tell you right now that Mr. Mims admitted to having sex with [A.G.]… |
| Defense Counsel:   | [Mims] said he never touched the girl.       |
| State's Counsel:   | No, if you would watch the videos, in his interview, his second interview with Detective Gaitlin, he admitted to having sex with [A.G.], along with Quayvon [Peoples], they were together, and that he, also witnessed Quayvon having sex with his sister. |
| Defense Counsel:   | Your Honor, in the discovery materials that I received…[there] is a note, a handwritten note, supposedly from Kendrick Mims, that was given to the detective that states, the last sentence says, "but I never once put my hands on my little sister." |
| The Court:         | Okay. What has the state got that contradicts what [Defense Counsel] is reading? |
| State's Counsel:   | Subsequent to uh, that statement, Mr. Mims was interviewed a second time by the Texarkana Arkansas Police Department. During that investigation, he admitted engaging in sexual intercourse with the victim in this case, [A.G.], and he was in the company of Mr. Peoples at the time. |

6

| The Court: | All of that is relevant…Did y'all give that discovery of the second statement to [Defense Counsel]. |
| State's Counsel: | I believe so. |
| The Court: | All right. [Defense Counsel], did you get that? |
| Defense Counsel: | I'm looking. Would this be the April 2nd of 2017 interview? |
| State's Counsel: | I don't know the date. I'm sorry. |

***

| The Court: | Well, we can shorten the whole thing. [Defense Counsel], you opened the door to something that looks like is gonna be maybe detrimental to your client, but you can go with it however you want to. That's relevant to this case. Obviously, if the state, Mr. Mims decides to testify here under oath for either side, that he saw your client have sex with [A.G.], then that's gonna be direct evidence against your client, and that will be allowed under any circumstance with the rape shield, because under any, any view of it, it'd be an accomplice to a criminal offense. |

*Doc. 13-9 at 270–278.* Following the exchange, the attorneys confirmed with Detective Gaitlin that Mims was an eyewitness but pursued no further questioning about Mims' confession or the pending rape charges against him.

A.G. A.G. testified about three instances in which she was sexually abused by Peoples. During one instance, Peoples took A.G. into the kitchen, made her get on

7

her knees, and forced his "thingy" in her mouth. *Doc. 13-10 at 35*. During the other two instances, Peoples came into A.G.'s bedroom at night. One time he led her to the living room couch where he put his fingers and "thingy" in the "place where she pees at."[1] *Doc. 13-10 at 32*. During the other nighttime instance, Peoples took A.G. to his room and had sexual intercourse with her on his bed. *Doc. 13-10 at 38–40*.

<u>J.G.</u> J.G. testified that, on two occasions, he saw Peoples on top of A.G. and that Peoples was moving his body in a "stroking" motion. *Doc. 13-10 at 61–65*.

On cross-examination, J.G. admitted that he had previously: (1) denied seeing anything happen between Peoples and A.G.; and (2) sent a text message to Peoples saying that he knew Peoples "didn't do anything." *Doc. 13-10 at 66–68*. J.G. explained that he loved Peoples and was initially torn between his little sister, A.G., and his older brother, Peoples. But ultimately, J.G. decided to come forward about what he had seen.

<u>Nurse Russette</u>. Nurse Russette, a trained Sexual Assault Nurse Examiner, conducted the physical examination of A.G. at the Texarkana Children's Advocacy Center in June of 2016. Nurse Russette did not find any physical findings of abuse when examining A.G. but stated that lack of physical evidence was not surprising considering that the alleged abuse happened when A.G. was around seven years old

---

[1] A.G. was fourteen years old when she testified at Peoples' trial. Upon further questioning, she confirmed that "thingy" refers to a penis and the "place where she pees at" refers to her vagina. *Doc. 13-10 at 31–32*.

and then examination took place when A.G. was thirteen years old. *Doc. 13-10 at 86*. She further stated that the findings from the physical examination were consistent with the sexual abuse history provided by A.G. *Doc. 13-10 at 83, 86*.

<u>Kaleigh Dodson</u>. Kaleigh Dodson, a forensic examiner with the Texarkana Children's Advocacy Center, testified generally about the process of interviewing children that report sexual abuse.

### D. Verdict, Sentence, and Direct Appeal

On September 28, 2017, after a two-day jury trial, the Miller County, Arkansas jury convicted petitioner Peoples on two counts of rape and sentenced him to thirty years in the Arkansas Department of Correction. *Doc. 13-8 at 27–31, 34–36*. Peoples filed a direct appeal, arguing that the State failed to prove that the rapes took place in Miller County, Arkansas and that the evidence was insufficient to convict him. *Peoples v. State*, 2019 Ark. App. 559. The Arkansas Court of Appeals affirmed the convictions. *Id.*

### E. State Postconviction Proceedings

On January 29, 2020, Peoples, without the assistance of counsel, filed a petition for postconviction relief in state court, under Arkansas Rule of Criminal Procedure 37.1. *Doc. 13-4*. Peoples raised many arguments in his Rule 37 Petition but, as relevant to the instant federal habeas Petition, he argued that counsel was ineffective because he failed: (1) to object to Lisa Grant's testimony about his

criminal history; (2) to object to Lisa Grant's testimony that bolstered the credibility of A.G.; (3) to endorse character witnesses at sentencing; and (4) "to object to the admission into evidence of the undisclosed statement of Kendrick Mims' confession for which the State surprise blindsided Petitioner…[and] fail[ed] to object to the nondisclosure of the State's evidence." *Doc. 13-4 at 6*. The state postconviction Court denied Peoples' Rule 37 Petition on February 4, 2020. *Doc. 13-5*.

Under Arkansas law, Peoples had thirty days—or until March 5, 2020—to appeal the denial of his Rule 37 Petition. Ark. R. App. P. 2(a)(4). He failed to do so.

Instead, on June 2, 2020, Peoples filed a Motion for Belated Appeal of his Rule 37 Petition. *Doc. 13-6*. The Motion was denied by the Arkansas Court of Appeals on July 15, 2020. *Doc. 13-7*.

### F. Federal Habeas Petition

Peoples filed the instant Petition for federal habeas corpus relief on December 21, 2020 (*Doc. 2*) and an Addendum on February 10, 2021 (*Doc. 11*). In the Petition, he brings four claims of ineffective assistance of counsel:

| | |
|---|---|
| Claim One: | Trial counsel was ineffective for failing to object to Lisa Grant's testimony about his criminal history (*Doc. 2 at 5*); |
| Claim Two: | Trial counsel was ineffective for failing to object to Nurse Russette's testimony that bolstered the credibility of A.G. (*Doc. 2 at 7*); |
| Claim Three: | Trial counsel was ineffective for failing to endorse character witnesses at sentencing (*Doc. 2 at 8*); and |

Claim Four:      Trial counsel was ineffective for failing to petition to have the State produce Kendrick Mims' admission that he had sex with A.G. (*Doc. 2 at 10; Doc. 11*).

Director Payne filed a Response arguing that the Petition should be dismissed because Peoples failed to fairly present the claims in state court and there is no excuse for Peoples' procedural default. *Doc. 13*. Peoples filed a Reply (*Doc. 18*); thus, the issues are joined and ready for disposition.

### III.    Discussion

### A. Procedural Default

Before seeking federal habeas review, a state prisoner must "fairly present" his claims in State court. *Murphy v. King*, 652 Fl.3d 845, 848–49 (8th Cir. 2011); 28 U.S.C. § 2254(b)(1)(A). To "fairly present" his claims, a prisoner must present each of his habeas claims through "one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). If a prisoner fails to fully exhaust his claims in state court and the time for doing so has expired, his claims are procedurally defaulted. *Coleman v. Thompson*, 501 U.S. 722, 731 (1991).

Here, Peoples failed to timely appeal the denial of his state postconviction petition and the appeals court declined to hear his belated appeal. Thus, his ineffective-assistance-of-counsel claims were not presented through a "complete round" of Arkansas's appellate review process and those claims are procedurally defaulted. *O'Sullivan*, 526 U.S. at 845; *see also Thomas v. Payne*, 960 F.3d 465, 472

(procedural default occurs when "a state court decline[s] to hear [a claim] because the prisoner failed to abide by a state procedural rule.").

Federal review of procedurally defaulted claims is barred unless the prisoner can demonstrate "cause" for the default and "actual prejudice" as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

As "cause," Peoples alleges that "he has tried desperately to follow all rules of Arkansas Appellate Procedure…but [he] doesn't know or understand much of the law of Arkansas or it[]s procedures." *Doc. 18 at 3*. Generally, *pro se* status and any unfamiliarity with the law or procedural matters do not constitute "cause" sufficient to overcome a habeas petitioner's procedural default.[2] *See Smittie v. Lockhart*, 843 F.2d 295, 298 (8th Cir. 1988).

However, *in limited circumstances*, lack of counsel in postconviction proceedings may constitute "cause" for the default of ineffective-assistance claims. *Martinez v. Ryan*, 566 U.S. 1, 17 (2012); *Sasser v. Hobbs*, 735 F.3d 833, 853 (8th Cir. 2013) (applying *Martinez* to Arkansas proceedings.).

---

[2] Cause requires a showing of some objective factor, external to the petitioner's defense and not fairly attributable to him, impeding him from constructing or raising his claims in state court or complying with the state's procedural rules. *Coleman*, 501 U.S. at 753. If no cause has been shown, the prejudice element need not be addressed. *McCleskey v. Zant*, 499 U.S. 467, 502 (1991).

Because Peoples was not represented by counsel in his state postconviction proceedings, Peoples' federal habeas claims may qualify for this limited exception to the procedural default rule —known as the *Martinez* exception—if he can show that his claims:    (1) were defaulted during the *initial* state postconviction proceedings; not on appeal; and (2) are substantial claims for ineffective assistance of trial counsel, "which is to say that [Peoples] must demonstrate that the claim has some merit." [3] *Hartman v. Payne*, 8 F.4th 733, 736 (8th Cir. 2021), *petition for cert. filed*, No. 21-862 (U.S. Dec. 10, 2021); *Martinez*, 566 U.S. at 17; *Dansby v. Hobbs*, 766 F.3d 809, 834 (8th Cir. 2014).

Of the four claims that Peoples brings in this federal habeas proceeding, Claims One and Three were presented at his initial postconviction proceeding in his Rule 37 Petition: (1) trial counsel was ineffective by failing to object to Lisa Grant's testimony about his criminal history; and (2) trial counsel was ineffective by failing to endorse character witnesses at sentencing. The state postconviction Court issued an opinion on the merits of those claims.

Default of Claims One and Three only occurred when Peoples failed to properly *appeal* those claims to the Arkansas Court of Appeals. Because Claims One and Three were defaulted on appeal, and not during the *initial* postconviction

---

[3] Although not an issue in this case, the *Martinez* exception may also apply "where appointed counsel in the initial-review collateral proceeding…was ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668 (1984)." *Martinez*, 566 U.S. at 14.

proceedings, they do not fall under the *Martinez* exception. *Hartman*, 8 F.4th at 736–37 ("the *Martinez* exception does not apply to defaults on appeal.")

Peoples' other two federal habeas claims—Claim Two: trial counsel was ineffective for failing to object to Nurse Russette's testimony that bolstered the credibility of A.G.;[4] and Claim Four: trial counsel was ineffective for failing to petition to have the State produce Kendrick Mims' admission that he had sex with A.G.[5]—were not presented to the state postconviction Court. Accordingly, those claims were defaulted during the initial postconviction proceedings.

The remaining issue is whether either of Peoples' remaining ineffective-assistance-of-counsel claims are "substantial." Because both claims are wholly without merit, they are not substantial and do not fall under the *Martinez* exception to procedural default.

---

[4] The parties apparently agree that this claim *was* raised in Peoples' state postconviction Petition. *See Doc. 2 at 7; Doc. 13 at 5*. However, Peoples' pending claim that trial counsel "failed to object to testimony of *the sexual assault examination nurse* bolstering the credibility of the victim" (*Doc. 2 at 7*) is separate and distinct from his state postconviction claim that trial counsel "failed to object to testimony of *Ms. Grant* that improperly bolstered the credibility of the victim" (*Doc. 13-4 at 4*).

[5] Even though Peoples' state postconviction claim that trial counsel was ineffective for failing to object to the State's nondisclosure of Mims' confession (*Doc. 13-4 at 6*) is substantially similar to his federal claim that trial counsel was ineffective for failing to petition for the disclosure of Mims' confession (*Doc. 13-4 at 6*), Respondent Payne concedes that this claim was not presented during the state postconviction proceedings, and thus concedes that the default occurred during the initial postconviction proceedings. *Doc. 13 at 5, 9*.

14

### 1. Peoples' Improper Bolstering Claim (Claim Two)

The exact contours of Peoples' "improper bolstering" claim are murky. He claims that his trial counsel should have objected to the Nurse Russette's testimony that "improperly bolstered" A.G.'s testimony. He does not expound on this argument in his Petition and appears to have all-together abandoned the argument in his Reply.

Improper bolstering, also known as improper vouching, "may occur when the government: (1) refers to facts outside the record or implies that the veracity of a witness is supported by outside facts that are unavailable to the jury; (2) implies a guarantee of truthfulness; or (3) expresses a personal opinion about the credibility of a witness." *United States v. Santana*, 150 F.3d 860, 863 (8th Cir. 1998).

Having reviewed the trial transcript in its entirety, the only statement by Nurse Russette that could *possibly* be considered bolstering was her comments that the lack of physical evidence of rape on A.G.'s examination was "not surprising" considering approximately six years had elapsed since the last incident of alleged abuse; and that the examination was "consistent" with A.G.'s reported history of abuse.

The state trial Court recognized Nurse Russette as an expert in the field of sexual assault nurse examinations. *Doc. 13-10 at 75*. When Nurse Russette stated she was not "surprised" and that sexual abuse history was "consistent" with the examination, she was simply expressing her expert opinion. She was not stating a

personal belief about the credibility of A.G. as a witness or "bolstering" any testimony A.G. made at trial.

Because there was no improper bolstering, Defense Counsel was not ineffective for failing to object to Nurse Russette's testimony. *Anderson v. Goeke*, 44 F.3d 675, 680 (8th Cir. 1995) ("[P]erformance of an attorney is not deficient for failure to object to admissible evidence.")

Because Peoples does not state a substantial ineffective assistance claim regarding "bolstering," that claim falls outsider the *Martinez* exception to procedural default, and it cannot now be reviewed or decided by this Court.

  2. *Peoples' "Failure to Petition" Claim (Claim Four)*

For his final claim, Peoples alleges that his trial counsel was ineffective for "failing to petition" to force the State to produce Kendrick Mims' confession that Mims had sex with A.G.

Kendrick Mims' confession is not contained in the record, either before this Court, or the state court. However, the parties discussed the confession during their trial sidebar. *Doc. 13-9 at 270–278.* The following details can be gleaned from that discussion:

1. Mims initially denied having sexual intercourse with A.G., both during an interview by Detective Gaitlin and in a handwritten note.

16

2. During a second interview with Detective Gaitlin, Mims admitted to having sex with A.G.

3. Mims stated that Peoples was also present when he had sex with A.G.

4. Mims witnessed Peoples having sex with A.G.

According to Peoples, this confession contradicted Mims' earlier statements that led to Peoples' arrest. *Doc. 1 at 2*. He argues that because these two inconsistent statements undermine Mims' credibility, they should have been used to impeach Mims. *Doc. 11 at 2*. Finally, Peoples argues that, if his defense counsel had obtained Mims' confession, he never would have been convicted. *Doc. 8 at 5*.

This claim fails for several reasons. First, Mims did not testify at Peoples' trial. Thus, there was no opportunity, or need, for defense counsel to impeach Mims.

Second, even if defense counsel was unaware of Mims' confession until trial, it appears likely that he *did* receive a copy of Mims' confession from the State. The State's attorney stated that she believed the interview had been turned over and defense counsel seemed to confirm that he had a record of the interview in his file. If defense counsel erred, it was not because he failed to *petition* for production of the confession.

Finally, and most importantly, Peoples fundamentally mischaracterizes the nature of Mims' confession. Peoples argues that he never would have been convicted *if* defense counsel had obtained a copy of Mims' confession. In other words, Peoples

seems to believe that Mims' confession is exculpatory evidence that should have been produced by the State.

Mims' confession is anything but exculpatory. Although Mims admitted to having sex with A.G., he stated that he committed the crime *with* Peoples and saw Peoples have sex with A.G. Once defense counsel learned the details of the Mims' confession, he made a tactical decision not to proceed with that line of questioning. Defense counsel was not ineffective by failing to obtain and introduce into evidence a confession that was detrimental to Peoples. *Bowman v. Gammon*, 85 F.3d 1339, 1345 (8th Cir. 1996) (noting that under Strickland, "decisions related to trial strategy are virtually unchallengeable"), *cert. denied*, 520 U.S. 1128 (1997).

Peoples' "failure to petition" allegations do not state a substantial ineffective assistance of counsel claim. Therefore, *Martinez* does not excuse the default of that claim, and it cannot now be reviewed or decided by this Court.

### B. Peoples' Motion to Amend Evidence

Peoples asks the Court to amend the evidence to include two documents that were not directly introduced at trial or during his Rule 37 proceeding: (1) Mims' confession; and (2) J.G.'s text message that Peoples "didn't do it." *Doc. 21*. Rules 7 and 8 of the Rules Governing Section 2254 Cases in the United States District Courts only authorize the habeas record to be expanded if the Petition is not dismissed.

Because the Court recommends that Peoples' Petition be dismissed, his Motion to Amend Evidence (*Doc. 21*) should be DENIED, as moot.

## IV.    Conclusion

Because Peoples' habeas claims are procedurally defaulted, the Court should dismiss this action, with prejudice.

## V.    Certificate of Appealability

When entering a final order adverse to a petitioner, the Court must issue or deny a certificate of appealability. Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts. The Court can issue a certificate of appealability only if Mr. Peoples has made a substantial showing that he was denied a constitutional right. 28 U.S.C. § 2253(c)(1)–(2). In this case, Mr. Peoples has not provided a basis for the Court to issue a certificate of appealability. Accordingly, a certificate of appealability should be denied.

IT IS THEREFORE RECOMMENDED THAT:

1.    All of Petitioner Quayvon Peoples' habeas claims be dismissed, with prejudice, and his 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus (*Doc. 2*) be DENIED;

2.  That no Certificate of Appealability be issued; and

3.  Peoples' Motion to Amend Evidence (*Doc. 21*) be DENIED, as moot.

DATED this 8th day of February, 2022.

_____
UNITED STATES MAGISTRATE JUDGE